Good morning, Your Honor. My name is Daryl Sapir. I'm here representing the Plaintiff Appellant, in this case, Brad Favre. This case, Your Honor, is a claim under our looper for a substantial burden on Mr. Favre's sincerely held religious belief that he must pursue, I'm sorry, must pray, with prayer oils that have been purchased from a vendor that does not sell swine idols. Specifically, the allegation is that the VDOC's policies of having one contractual vendor for all items substantially burdens that belief by not permitting Mr. Favre any opportunity to purchase prayer oils that are not sold by a vendor that sells swine idols. In this case, Your Honor, there is no serious contest as to Mr. Favre's substantial belief, I'm sorry, sincerely held belief, for the substantial burden to that belief. Nor is there any serious contest to the defendant's VDOC's allegations of a compelling governmental interest. Specifically, the governmental interest is a cost containment and security measure. The question at issue is whether or not the district court, as this was a trial to a judge rather than to a jury, correctly applied the legal standards to the evidence in this case to determine that the single vendor policy of the defendant was the least restrictive means. When there's been a trial, why isn't the question of least drastic means a question of fact? The district, the magistrate judge heard a great deal of evidence going to the question of least drastic means heard from plaintiff and heard from corrections officials. And why isn't, after where you have a trial, why isn't the least drastic means just a factual one? Yes, Your Honor, in this case, there's actually two steps to that process. The first is the argument that the district court incorrectly shifted the burden from the defendant to prove least drastic means, which are least restrictive means, to the plaintiff when stating that the alternative that the plaintiff had presented, in this case, a single vendor contract with a religious vendor, in addition to the non-religious contract they had with Keith, the court said that the plaintiff had not presented sufficient evidence that that was a possible alternative. I think that was both factually incorrect, but it was also an incorrect application of the legal standard in our case. Again, the plaintiff has the burden of showing a substantial burden to a sincerely held belief. At that point, the burden shifts to the defendant government under a strict standard to demonstrate that the policy at issue is the least restrictive means of meeting a governmental interest. Well, one of the difficulties here is that, you know, unlike in many cases, here the correctional facility had actual experience with what you're thinking, what you're opposing is the least drastic means. In other words, the corrections department has experience with multiple vendors, and that posed all kinds of difficulties. And the district court, the magistrate judge, listened to the testimony on that fact and credited that testimony. Because a lot of these cases, we have just speculation about whether something would be a least drastic means or not. But here, the multiple vendor option, which you're suggesting is something that they already tried, and then they had to give it up in 2013 because it created multiple problems. Your Honor, the evidence is that the defendant had a policy of having one vendor run their commissary. And then on an individual basis in individual facilities, an inmate would request to source something themselves directly from a vendor of their choice, and exceptions would be made on an ad hoc basis. So there was no unified policy, there was no single vendor for religious items. It was vastly different and unapproved sources that had to be made individual exceptions for. We do not disagree that the VDOC had a need to move away from that ad hoc, wild west kind of approach that they had going on where anything could be purchased without prior approval of the specific item from any vendor that the individual inmate has chosen. Our position is that... And if we have compliant vendors for some religious faiths, and not for others, don't we run into an establishment clause problem? I mean, the state can't be sort of picking and choosing among religious faiths as to what it has a compliant vendor for and what it doesn't. I mean, it seems to me you're courting establishment clause difficulties. So that would be the next suit. Your Honor, the concern here is that the defendant has placed no evidence in the record that indicates that they've ever had any prior suits, any grievances, any complaints, or that there are other religions even that would require a vendor other than kifi. I'm not sure the burden requires there to have been actual factual breakdowns of security. It seems to me that when the prison authorities say we have difficulty with bringing in containers with liquids, it's a matter of common sense that liquids can contain poisons, they can contain alcohol, they can contain explosives, all kinds of things that need to be checked. And as a consequence, we don't have to have any circumstance where somebody was poisoned to believe that. And as you probably remember, in Greenhill, we addressed this type of thing, and we suggested that the BDOC doesn't have to consider all the conceivable possibilities. It really needs to address the suggestions you have made. And it seems to me their suggestions are not hollow. They're worried about several things, efficiency, compliance, security, safety of the prisoners, safety of the prison, circumstances, compromise of the prison, a phenological interest. While your client has a good faith belief, unfortunately, in prison, he can't have everything. He can't go to a cathedral. I think the courts ought to be very sensitive to religious practices in prisons. I think it's very beneficial both for the prisoners and for the system to have that. And we've recognized that in prior decisions. But in this case, we're faced with the question, has the BDOC just made something up for convenience, or are they articulating some efficiencies, expenses, security issues, and so forth that are real? And your suggestion, they have to experience adverse consequences as opposed to pointing them out. 40 different religions, faiths is just one thing, but there are tons of others, too. It's just a matter of, and by aggregating them through a single vendor, they create this one problem. They're willing to give them the holy oil, but they create the problem that the vendor does sell a Christian cross. And the Christian cross is, of course, an idol that is not acceptable. And this may have to be some area where the district court may have drawn the right balance. I don't know. Maybe you persuade us otherwise, but that's my concern right there. Yes, Your Honor, and I acknowledge that the single vendor contract is a method of addressing those concerns. My issue is the contract provides for a key feature both bringing items in, and they do actually do a security check of all items there, removed from the package, bagged, x-rayed and scanned, that's coming into the facility before it crosses the secure boundary. That is done for all objects that enter the facility. You're absolutely right. You're absolutely right. But in other words, they do their own check anyway. But they have pointed out that they have a relationship with this vendor, and they have called it a pretty high level of contractual trust. They even have used the word, I think, fiduciary with them. They trust this vendor. And so the vendor is not going to be aiming or helping compromise the perimeter. The prison still has to do its own checks, no question about it. But if you were dealing with a vendor, hypothetically, that would be attempting to compromise the perimeter. You can hide things in televisions. You can hide things in vials. There's all kinds of methods by which to sneak things in. And that risk increases if you all of a sudden have to go out to hundreds of vendors in order to satisfy the needs of the prisoners. And that's sort of a matter of common sense, isn't it? Well, Judge Motz has a question for you. I was reaching off of that question that Judge Neumeier raised. And it seemed to me that in your questioning of Ms. Vargo, or Mr. Vargo, anyway, whoever the witness was. Mr. Vargo. It was the contract that they had with this other vendor that, as Judge Neumeier just pointed out, gave them a lot of assurance. Now, if that was a viable alternative, that is entering into, it could be exactly the same contract with an Islamic vendor that would give these oils. Isn't that something that they should have considered? And it was put into the record that they had not done that. Yes, Your Honor. That is our argument. And in fact, the... Well, you never said your argument. I apologize. You didn't say it orally. I apologize if I wasn't clear. We actually proposed that they should have considered entering into a similar vendor contract for religious items with Hololco, who is actually the company from which Kiffey sources these oils that have already been inspected, approved, certifications are made. But it's the contract that is important. At least that's what they said. As Judge Neumeier pointed out, they got a lot of comfort from what was in the contract, and one can understand that. Correct. And what you did was ask them, the question of whether you decided that you would let this Islamic vendor in is not the same as getting a contract with Islamic vendor. And that is, I read the record, something that they had not considered or that they had considered and rejected. Yes, Your Honor. That was the argument we proposed. I'm sorry. The alternative we proposed was a single vendor contract that provides all the same contractual protections and duties that gave the defendant comfort with Kiffey being entered into with a single vendor for religious items. And the defendants admitted, Ms. Fargo admitted that that had not been considered prior to the switch from an ad hoc to an entirely single vendor program. Were the prayer oils supplied by Kiffey Islamic compliant? They were Islamic compliant sourced from Halalko, yes, Your Honor, except for the fact that they were sold by a vendor that sells swine and idols, meaning Kiffey. But if they were Islamic compliant, what is your complaint? Yes, Your Honor. The oils themselves are compliant up until they are sold by a vendor that sells swine and idols. And it's not uncontested that Kiffey sells both pork products and idols, meaning things like crucifixes and things of that nature, which Halalko does not sell. So once they pass from purchase by Halalko and then sold to the plaintiff by Kiffey, they are no longer Islamic compliant prayer oils. I thought the DOC did address that by indicating that they have 40 different faiths that they would have to enter into contracts with. And there was some concern about the establishment clause and the checking out of those vendors. Some of them may be marginal. Some may be safe. And whether they are prepared to establish that trust. I thought that was all part of what the response was to that. Ms. Fargo actually testified that you might have to go down that road or you tend to have to do it. She had no indication that there was any actual consideration of that or any indication that that would be something that would become a problem if a single vendor, a religious vendor, was entered into a contract with. The evidence simply wasn't in the record. And in fact, the district court ruled that the plaintiff hadn't proven that such a contract was even possible. Whereas Ms. Fargo testified that if they were to consider a vendor contract with Halalko, they would have to make sure Halalko was the best option because there are so many options. You know, just a suggestion to your response. It's not simply the contract that establishes the level of trust. It is the experience with Keith that establishes the level of trust. You can have all the contracts and everything in the world, but that's no substitute for the actual experience. But the record in this case emphasizes that the witness representing the prison put a great deal of support, a great deal of deference to the contract. She seemed to think that that was the critical thing, as Judge Niemeyer pointed out earlier. Ms. Fargo, we'll give you just a moment. I can point you to the appellate record at page 114, lines 4 through 6, in which the witness says, it is the contractual obligations and responsibility that gives us confidence that we can bring in these items without the extra security measures and the extra costs associated. And we've had experience under the contract. The one question I have, aren't the prayer oils supplied by KIPI Islamic compliant? Don't they buy them from Islamic suppliers like Halaleo or whatever it is? They are Islamic compliant when they leave in Halalko's hands, but not with the KIPIs. Isn't that worth a great deal that the oils themselves are Islamic compliant? Unfortunately, no, Your Honor. Once they arrive at KIPI's hands and KIPI sells them to the plaintiff, under his religious beliefs, they are tainted by the swine and idols sold by KIPI, and they are no longer pure, and they don't purify his prayers. So unless they are sourced directly from a client... But there's no evidence of that, is there? Yes, Your Honor. Mr. Tabor himself testified as the source of his belief. He's a devout orthodox Muslim. His beliefs are that all items have to be purchased from a vendor that does not sell swine and idols, or they are tainted. That he has to go to prayer to seek purification, and that thing purifies him. Okay, thank you very much. Any questions? Judge Niemeyer, Judge Mott? Ms. Cahill, we'd be happy to hear from you. Good morning, Your Honors, and may it please the Court, Laura Cahill on behalf of Harold Clark. In this case, the district court properly found that DOC first had a compelling interest in maintaining the prison security and ensuring efficient operations of prison facilities, and that the single vendor policy achieves those compelling interests. Let's get right to the core of the argument that's made. Yes, Your Honor. And that is, what is the response for the Department of Corrections not entering into a contract with Halaleo, whatever the name of that company is? What is the response for not entering into a contract similar to the one that it enters into with Keith? Your Honor, Mrs. Vargo testified at trial that entering into another contract would not achieve the compelling interests of maintaining prison security and secure operations, efficient operations, that the single vendor policy does. It essentially would lead to a… Well, that's conclusive. What are the problems she had, he had? That it was a she. She, excuse me. That by entering into a contract, whether they considered it or not, entering into that contract wouldn't achieve the same needs, because essentially they would be returning to a multi-vendor policy. But aren't they required to consider the least restrictive alternative? And she said, she was asked, have you considered having a contract with a specific vendor to provide Islamic paper, prayer oils to Islamic inmates of the DOD, just as you have with Keith? Not at this time. Your Honor, I would… So have they considered it? Maybe she has good reasons for not doing it, but they didn't consider it, right? But, Your Honor, DOC is only obligated to consider options that would also achieve its compelling interests and would alleviate the substantial burden. They're not required to consider options that doesn't achieve their compelling interests. And essentially, you know, asking them to consider something that they've already rejected. She didn't say that. She didn't say they'd already rejected it. She did testify, though, later when probed further about it, that entering into such a contract on the stand, which I have to also point out that that was the first time that this point was brought up, was when Mrs. Vargo was on the stand after, you know, extensive litigation, 30B6 depositions, specifically deposing Mrs. Vargo, that this would, you know, she later was asked, you know, further about that and said that this would not achieve the compelling interest because essentially they would be returning to a multivendor. Whether they have contractual relationships with them, you know, that may solve some of the problem, but it wouldn't resolve all of the issues that she testified with that existed with respect to multivendors. I think that my friend on the other side… All of doing this one would be one other vendor. That's all we know about. Well, Your Honor, she testified and the court gave credit to her testimony and experience as a prison official that one situation would lead to others. This is not viewed, you know, in a vacuum. They have experience with and, you know, do everything that they can to accommodate religious practices. I mean, I hear you. I understand you. And I don't know that that doesn't make sense. But didn't the Supreme Court tell us in Holt, the classic rejoinder bureaucrats throughout history, if I make exception for one, I'll have to make one for another. So no exceptions. Didn't it reject exactly that? I'm quoted from what it said. Yes, Your Honor. I do understand that. But this is a little bit different when we're talking about the whole purpose achieved by the… The whole structure that achieves the compelling interest is the fact that there's only one option and they don't make multiple exceptions. And that's where it's distinguished. It's funny that they never considered this. That's the problem. Maybe they can say we considered it and we are now considering it. We will consider it, but we are rejecting it for these 14 reasons. That's what we did in Greenhill, didn't we? In other words, we indicated that the least restrictive method could be raised during the process or even in the litigation and could be rejected in the litigation itself based on the reasons that they have. And I think that's what was done here. The prison said they hadn't considered that because it wasn't within the scope of what they were trying to do. But when it was suggested to them, they explained why during the course of this litigation and the testimony. In Greenhill, we said that's exactly what you're allowed to do. So maybe you can direct me to the piece in the record extract where they explained why they had not considered it. Your Honor, Ms. Vargo testified on direct vote for the plaintiff and the defendant. I understand that her testimony is scattered throughout the transcript. So just tell me where she explained why they had not considered it. Your Honor, I believe it's on JA-162. 162? Yes, and she's asked, and if you were to enter into a contract as plaintiff's counsel suggested with a Muslim-based service or Muslim vendor in a similar fashion to the way you entered into a contract with Keith, would that necessitate similar contracts with other vendors? But that's the other one. We do it for everyone. I just told you the Supreme Court says that's no good. Just for now, take that as— Yes, Your Honor. But then she continues on to say, you know, basically then we're just contracted with multiple vendors and we're back to dealing with multiple— you know, it's not just the vendor ships it to the Department of Corrections. The vendor has a commissary window that operates inside the facility. They are employees that are inside each facility. The contract, you know, goes beyond you're responsible for selling and providing these items to the Department of Corrections. Well, the question of whether they considered it, it seems to me, is— it comes down to whether they considered a single vendor policy versus a multiple vendor policy, which a contract, another contract, would involve. And before 2013, they had experimented with multiple vendors. And that had raised all kinds of problems. They testified to that. The trial judge credited that testimony. So I don't think it's necessarily whether they considered an Islamic, a particular Islamic compliant vendor. I think the question here is whether they considered dealing with a single vendor versus dealing with multiple vendors. And that goes to the heart of what the corrections system did actually consider. And they didn't want to go down that road again. Do you see what I'm saying? Your Honor, I do. And I agree that, you know— That's what the issue is. And that is whether they can stick with a single vendor policy or whether they go with multiple vendors. There's been no complaint. And I think it would be a more compelling case if the oils, in some way, were not Islamic compliant. But I understand that the oils were Islamic compliant, were they not? Yes, they were, Your Honor. But under the religion, it has to be carried by an Islamic person. Is that right? I mean, are they—is the other side making that up? My understanding, and in the Volupa framework, it is Mr. Faber's personally held religious beliefs. And his personally held religious beliefs, I believe, are that he cannot purchase it directly from a vendor that also sells blind idols or alcohol or that take interest. So they are procuring these oils from, I guess, the most well-known vendor is Halaleo, is it? That is one vendor that's— But they're procuring the oils from an Islamic compliant vendor? Yes, and they're certified to that. Yeah, I mean, the oils are Islamic compliant, and they are procured from an Islamic compliant vendor. And I think that one of the difficulties here is that a lot of these prisons are very short-staffed. And they have screening for—they have one rule for religious publications, but the additional screening for all kinds of other materials would impose a substantial burden. And I think that the level of trust that enables them to not have to engage in the most intensive screening comes from their extensive history with Keith. Given the things that can go wrong in terms of product quality and in terms of smuggling contraband, it seems what the prison is saying is that we're in a whole lot better situation just dealing with a single vendor who we have experience with than multiple vendors whom we do not know and who don't have a track record. That's what I always thought the issue was, was, yes, they had tried contracts with multiple vendors. They had tried it. But they hadn't had contracts. Is that—am I misreading the record here? No, Your Honor. There were no established contracts with religious vendors. But there were arrangements. I mean, you had to—they had materials that were supplied, and there were materials that were paid for. At a certain point prior to the implementation of the policy, offenders were allowed to order directly themselves from different vendors. Again, the policy is not black and white. It evolved not, as the court pointed out, not in a vacuum over time. And each was in response to different security concerns that were raised. And I think that those security concerns and experience were credited by the district court when Ms. Fargo was presented for the first time at trial. And I know that my friend on the other side disagrees and argues that he has raised this issue before, but I respectfully disagree. But the district court found that when it was raised before her, that her experience and expertise as the representative of DOC and the history of the policy informed her response to say this would not achieve those compelling interests. The idea that there is that much of a difference between multiple contracts with vendors and no contracts with multiple vendors, yes, that would alleviate some of the problems before, but it doesn't alleviate all of them. Okay. Where did I find that evidence? Around where? In the JA? Specifically, I mean, the district court itself. Yeah, but I'm interested in the evidence, the testimony. I, you know, again, I think that this is piecing parts of it together. I can't necessarily identify. Because you and I agree that at one point she said, yes, we could consider a contract. And she talked a lot about the comfort they get from a contract with the group that they have. And we could consider a contract. But have we done that? No. We know that we don't disagree about that. Right. But you're saying what she later says is explains why they wouldn't do that in the future. Is that what you're saying? Yes. Okay. I also, you know, in that line of. Page 161 on the whole explanation is that it would violate the multi-vendor policy and they'd be right back where they started from. Yes. And their multi-vendor policy had was explained initially as to why they wanted that. Assumed in the multi-vendor policy, just what the Supreme Court said we shouldn't do, which is if you give it to one, you give it to all. But the question of picking out the Muslims and not picking out the Christians and not picking out the Baptist. And they said she explained there were 40 different faiths they would need to enter into with that. And that would violate their multi-vendor policy and goes back to Judge Wilkinson's inquiry about really what we're talking about is the multi-vendor policy versus the single vendor. I think that's where she explained it. I would agree. I also have two points I just want to make sure to make that at some point, you know, during the course of litigation. Point made in Greenhill and taken from Hobbs. Where does that extend to at some point? You know, arguments made in closing briefs, arguments made in closing arguments. I mean, again, the standard under Holt is that they're not required to consider every conceivable option. They had a lot of experience with this and considered many of them at no time prior. Did they bring up contracting with an Islamic vendor specifically? They did bring up at the deposition, which has not been made part of the record. The 3086, it could have. Trial counsel did not. But there was briefing and questions. And even in their closing brief, which is part of the record, they refer to a one religious vendor that could meet the need. In their closing brief, it's J.A. 403. No evidence that one large scale vendor could not accommodate other religious briefs. Other than that of Mr. Faber, that is in direct contradiction with what Mr. Faber saying would alleviate that burden if it was one religious vendor that that provided all religious items. So separate than he they're still selling idols, according to Mr. Faber's own testimony, which brings me to a second point is that nowhere in the record. Does plaintiff say or they establish that a specific contract, as the one suggested, would also alleviate the substantial burden or that resolves the problem? What you're saying at bottom, it seems to me, and I think this flows from the record, is that the question and the different options and to a degree, these are independent of whether there's a contractual relationship or not, is the question of whether there should be a single, whether the correction, whether the correctional institution is entitled to deal with a single vendor or whether they need to go the road of multiple vendors. And all they're saying is that the multiple vendors presents us with a whole host of problems. And that's something that it seems to me that the district court listened to, heard extensive testimony on the problems that a policy of multiple vendors created. And that would be independent of a contract. You could have contracts with a whole lot of people. And it wouldn't alleviate the problems that arose with multiple vendors, which the VDOC had already experienced. Isn't that correct? That is correct. And while the specific, as Judge Box points out, that they had not experienced specific contracts that are the same as Keith's with these vendors, that problems would still arise. You'd have to have multiple commissary windows. You still have then multiple deliveries coming in, multiple vendors to check. And the relationship, contractual relationship is not just built on experience, but the terms of the contract, which, you know, having that with two or maybe more, even under no slippery slope, you know, argument, under just this case alone, it may be that I'm sorry, I see my time has expired. May I finish my point? Yes, please do. The plaintiff here, Mr. Faber, said that he cannot purchase religious items. He actually says all items, but that they're stricter when it comes to religious items from a vendor that provides, as I said, swine, idols, alcohol or that takes interest. You know, well, one vendor that they suggest might be appropriate for oil. They might not sell prayer rugs or cookies or other religious items that he has already stated that he needs. Let me ask you this. If a family member or a close friend visited him in prison and purported to gift him with some holy oil that the friend or the family member had purchased from an acceptable outlet, would the prison allow that? No, Your Honor. The only donations to be made are through Grace Inside or Muslim Services, which is contracted, partially paid for by the Inmate Commissary Fund, which is a commission or part of the sales from Keith that funds it. They provide not only religious services, but they also will accept donations. And there's a list of items that they will accept donations, but they can't be given to any specific offender. And that is another issue that was sort of addressed by the vendor policy is that there's anonymity between the vendor, whether it's Keith and the person ordering it to decrease the chances of, you know, contraband being entered into the facility. All right. Thank you, Counsel. I'll ask Judge Niemeyer, do you have any further questions? No, I'm fine. Thank you. Judge Moss, do you have further questions? All right, Mr. LaPierre, you have some. Thank you. There are multiple counsels here. Are you the one that's up next? It's just myself, Your Honor. Okay, go ahead. Yes, Your Honor. I will address the first point, and I believe my counsel, Ms. Cahill, my co-counsel, Ms. Cahill, may have pointed that out herself. The argument has been made that the alternative proposed was proposed for the first time in question at the trial itself. However, I would point the court to the reply brief we had put forth in this case. It says, quotes to or cites to the three places wherein we did actually raise that in depositions with the witness prior to the trial itself. The issue here, Your Honors, is that the defendant had a policy wherein individual inmates were allowed to independently order out from multiple vendors of their choice any item that they wanted prior to the institution of a single-vendor policy. That created some problems that were well laid out. In response, the defendant instituted a single-vendor policy where all items regardless of type or source must come from a single vendor without consideration of a lesser restrictive alternative of entering into contractual arrangements with a single vendor and then a vendor that meets the requirements of Mr. Faber's religion. While it was asserted that Mr. Faber has a personal belief, it is a belief of the type of religion he has, an orthodox Sunni Muslim religion, that the items must be purchased from a halal vendor to maintain halal status. They never considered it. They never rejected it. In the trial itself, the only thing they said is that once you make exceptions for one, you tend to have to make exceptions for others for unacceptable reasons. Well, she went much further than that because on, I don't know if it's your examination, but on her cross-examination, she talked about the need for finding a Muslim supplier. They would have to investigate the supplier. They would have to pick a contract with a particular supplier and enter into that contract. And they would have to do that on each request. And the question she said, all of a sudden, we're now a multiple vendor situation. We will have to investigate that person. And we have multiple persons coming to the door. I mean, she went into that some length, basically saying that it takes them right into the risks that were present in a multiple vendor situation. She did state that there would likely be other people who would make their requests, and they would have to investigate and select vendors. However, she did admit that they could get their entry into contractual relationships with these vendors, that it is the contracts that give them comfort and address the safety, security, and cost concerns with keeping in that contract. They talked in length about the relationship they have with D. The problem is that the problems are not an outgrowth necessarily of a contract or the absence of a contract. It's the experience that you have that gives you confidence with the parties that you contract with. Any business is likely to have contracts with two or three or four different people, and they have confidence in some, and they don't have confidence in the other. And the problem is the multiple vendors create all kinds of staffing problems and scrutiny problems and the rest. And as I say, I know the people who the Department of Corrections, like so many other businesses these days, are short-staffed in many instances. And there's a large quantity of illicit materials that can be smuggled in under the guise, well, this is just a religious item. And it seems to me we are loading a real burden on the back of the institution when we throw the institution back into a multiple vendor policy, which there's extensive testimony about all the problems that created. The issue is that all the testimony and all the problems that were created were where there was multiple vendors chosen at random by the inmates at an individual basis in individual facilities without any contractual arrangement or any prior approval. We do not have a problem with the fact that there are approved sets of religious items that you can get, only those. We do not have a problem with the fact that those items have to go through security and be delivered to the inmates by key fee-run commissary personnel. We don't have a problem with the fact that that order has to go through a commissary system and is anonymous to the vendor. The issue is they never considered and rejected entering into a contractual relationship with a religious vendor as a less restrictive means than a pure single-vendor relationship. They did consider it when you raised it. I keep pointing out to our prior decisions that say it doesn't have to be historical because they don't know about your complaints yet. They have to be able to respond to your complaint during the prison proceeding, during the deposition, and at the trial. We said at any one point, those considerations have to be taken into account. You did bring it into account and she did respond to it. The question is, was that response adequate and was the fact-finding sufficient? I think it's a ghost issue that it had to be raised some point in time in history before this proceeding. It's just not so. Yes, Your Honor. She did state that they had not considered. When she considered it at the trial, her concern was that you had to make more exceptions and that they would be in a multiple-vendor position and set it back to concerns that they had uncontracted, unapproved, multiple vendors that just had none of the contractual relationship. She talked about the investigation. She talked about you couldn't just go to one contractor. You'd have to go to other Islamic suppliers and you'd have to evaluate them. You'd have to do this for anybody who requested it because now this request is being made. The prison doesn't want to assess the religion aspect. They'd have to go through this religion committee. But all this was explained. And the question is, you can argue, I think, that this reason is not sufficiently responsive to the religious practice. But the whole notion of whether it was raised and responded to, I think it was. The record, the whole record basically addresses this. El Alco's name came up dozens of times. Everybody's talking about enter into El Alco with this. And she explained what the reasons were. Now, if they're not sufficient, that's really what we're addressing on this appeal. But I'm not sure we should get stuck on whether it was raised in deposition or was raised in the past. They responded to it when you presented it to them. And the question is, was that adequate? And the answer is, well, we have to decide. And the district court did decide it. We just have to decide the district court is correct. Counsel, there's one other point to follow up on what Judge Niemeyer said. And that is, if you have a contract with an Islamic compliant vendor, that still doesn't resolve all the problems. It may not, because there's no guarantee that the Islamic compliant vendor is going to be selling all the different religious materials that inmates may want. And that's true with any religious faith. You can have a contract with an Islamic religious vendor. And they would say, well, you may be supplying prayer oils, but you're not supplying this. And you're not supplying that. You're not supplying that. So in order to meet all those needs, you start saying, well, I have to have contracts with this. And what they're trying to say is both. It's simply at bottom that the multiple vendor situation doesn't work. Judge Niemeyer says you don't need a historical reference point. And I think he's correct on that. But in this case, they do have a historical reference point, not with the precise thing you're talking about, but with multiple vendors and the problems that that gives rise to. That seems to me what the basic question is. Your Honor, our position was, aside from the burden shifting issue, which is a separate one, was that they had not raised sufficient evidence or any evidence that there would be any insufficiency in Halalco, because Halalco provides the items that he needs, the prayer oils and the kufi, or that there had been any evidence related to any other religions that did not find the kifi commissary acceptable. All right. Thank you. Thank you, Your Honor. Judge Niemeyer, do you have any more? Judge Motz. All right. We thank you. Thank you both. I'm sorry we can't come down and greet you, but we want to thank you both. And we will proceed into our next case.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Diana Gribbon Motz